UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN JOSEPH FORJONE, etc., et al.,

                          Plaintiffs,                       **06-CV-0080A(Sc)**

      vs.

The States of CALIFORNIA, et al.,

                          Defendants.
_____

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY NEW YORK STATE ATTORNEY GENERAL AND NEW YORK STATE SECRETARY OF STATE

ELIOT SPITZER
Attorney General of the State of New York
Attorney for Defendants
BY:
PETER B. SULLIVAN
Assistant Attorney General of Counsel
107 Delaware Avenue - 4th Floor
Buffalo, New York 14202
(716) 853-8473
Peter.Sullian@oag.state.ny.us

**Table of Contents**

Page

Preliminary Statement.....................................................................   1

Statement of Facts..........................................................................   1

POINT I

NOTWITHSTANDING THE COMPLAINT'S DEMAND FOR
THE CONVENING OF A THREE-JUDGE COURT, THIS COURT
CAN AND MUST INITIALLY REVIEW THE COMPLAINT........   3

POINT II

THE COMPLAINT MAKES VIRTUALLY NO ALLEGATIONS
AGAINST THE ATTORNEY GENERAL AND THE SECRETARY
OF STATE, AND IN FACT, NEITHER OF THESE OFFICIALS
HAS A ROLE IN THE MATTERS COMPLAINED OF
BY PLAINTIFFS............................................................................   4

POINT III

PLAINTIFFS CANNOT PROCEED BECAUSE
THEY LACK STANDING AND HAVA DOES NOT
PROVIDE FOR A PRIVATE RIGHT OF ACTION

    A.  Plaintiffs Lack Standing ................................................   8
    B.  Plaintiffs Do Not Have a Private Cause of Action
    Under HAVA ..................................................................   12

POINT IV

ALTERNATIVELY, THE COURT SHOULD TRANSFER
VENUE OF THIS ACTION TO THE NORTHERN DISTRICT
OF NEW YORK, WHERE PLAINTIFFS HAVE PREVIOUSLY
COMMENCED A SIMILAR ACTION ......................................   15

POINT V

IF THE COURT DOES NOT DISMISS AND DOES
NOT TRANSFER, IT SHOULD ORDER PLAINTIFFS
TO FILE A MORE DEFINITE STATEMENT .............................   17

Conclusion....................................................................................   17

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN JOSEPH FORJONE, etc., et al.,

                      Plaintiffs,                      **06-CV-0080A(Sc)**

        vs.

The State of CALIFORNIA, et al.,

                      Defendants.
_____

## **Preliminary Statement**

This memorandum is submitted in support of the motion of defendants Eliot Spitzer,

New York State Attorney General, and "the New York State Secretary of State", as identified by

plaintiffs, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for the complaint's

failure to state a claim against these defendants.  Alternatively, if such motion is denied, these

defendants move the Court for an order pursuant to 28 U.S.C. § 1404(a) transferring venue to the

Northern District of New York in the interests of justice, or requiring plaintiffs to file a more

definite statement.

## **Statement of Facts**

The moving defendants understand that, for the purposes of this motion, the Court must

assume the truth and accuracy of the complaint's allegations.  However, the complaint is a

rambling, disjointed, recitation of statutes, parties, acronyms, and theories, presented in such a

way that it is nearly impossible to determine what it is that plaintiffs are alleging.  Nevertheless,

with respect to the two moving defendants it is clear, whatever it is that plaintiffs are

complaining about, that these defendants have had nothing to do with these allegations and that plaintiffs do not have the legal standing to make their claims against these defendants.

In broad strokes, plaintiffs seem to be complaining about policies in New York State[1] regarding the implementation of the Help America Vote Act ("HAVA"), P.L. 107-252. This statute imposes various requirements on states for the conduct of federal elections and provides for payments by the United States to individual states to meet these standards. Plaintiffs appear to allege, with respect to New York State, that the New York State Board of Elections has failed to meet requirements imposed on New York by HAVA (¶¶ 32, 33)[2] and that the State has improperly drawn the boundaries for Assembly, State Senate, Congressional, and Judicial districts. ¶¶ 20, 28, 29. Other than the HAVA claims, plaintiffs' claims appear to be based largely on New York law, particularly article III of the New York State Constitution and various provisions of the New York Election Law, although they refer as well to the United States Constitution and various federal statutes.

The complaint lists six causes of action, at ¶¶ 44-49, each of which has something to do with reapportionment of districts. Several of these causes of action, by their own terms, are based entirely on state law. For example, the first, fifth, and sixth causes of action (¶¶ 44, 48, 49) and the first four of the claimed "injuries" claimed by plaintiffs (¶¶ 51-54) rely entirely on the State Constitution and/or the New York Election Law. As relief, plaintiffs ask the District Court to convene a three-judge panel pursuant to 28 U.S.C. 2284 and to grant various forms of

---

[1] Plaintiffs also sue the states of California, Oregon, Nevada, Arizona, New Mexico and Texas; for the purposes of discussion in this memorandum, the moving defendants do not address whatever role it might be that these other states play in this case.

[2] Unless otherwise specified, references to paragraphs refer to paragraphs of the complaint.

declaratory and injunctive relief, most of which have to do with drawing new district boundaries.

Plaintiffs also seek damages of some sort.  ¶ 62; prayer for relief paragraph (s).

**Argument**

**POINT I**

**NOTWITHSTANDING THE COMPLAINT'S DEMAND FOR THE
CONVENING OF A THREE JUDGE COURT, THIS COURT CAN AND
MUST CONDUCT AN INITIAL REVIEW OF THE COMPLAINT**

The complaint cites 28 U.S.C. § 2284 (¶ 2; prayer for relief ¶ (a)) and maintains that the

Court must cause a three-judge court to be empaneled.  ¶ 2.  That statute provides that:

> A district court of three judges shall be convened when otherwise
> required by Act of Congress, or when an action is filed challenging
> the constitutionality of the apportionment of congressional districts
> or the apportionment of any statewide legislative body.

28 U.S.C. § 2284(a).  The statute further provides that:

> Upon the filing of a request for three judges, the judge to whom
> the request is presented shall, unless he determines that three
> judges are not required, immediately notify the chief judge of the
> circuit, who shall designate to other judges, at least one of whom
> shall be a circuit judge.  The judge is so designated, and the judge
> to whom the request was presented, shall serve as members of the
> Court to hear and determine the action or proceeding.

28 U.S.C. § 2284(b)(1).

This procedure does not mean that the district court judge who first hears the case has

only a ministerial role when the case is first filed.  While the district court's authority at this

stage is limited, it extends to:

> determining whether the constitutional question raised is
> substantial, whether the complaint at least formally alleges a basis
> for equitable relief, and whether the case presented otherwise
> comes within the requirements of the three-judge statute.

Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715 (U.S. 1962).  Further,

> Regardless of the nature of the relief sought, a single judge has the authority to review a complaint seeking the convening of a three-judge court in order to determine whether it states a substantial claim and one over which the Court would have jurisdiction. This review by a single judge includes the determination of whether the complaint presents a judicable controversy and whether a plaintiff had standing.

Sharrow v. Puyser, 443 F.Supp. 231, 323 (S.D.N.Y. 1977) (citations omitted). This Court should, therefore, consider these issues.

In the present case the complaint neither presents a substantial constitutional issue nor is brought by plaintiffs who have standing to bring these claims, even assuming the Court can tell what claims they are. The Court should therefore dismiss it, without convening a three-judge panel.

## POINT II

### THE COMPLAINT MAKES VIRTUALLY NO ALLEGATIONS AGAINST THE ATTORNEY GENERAL OR THE SECRETARY OF STATE, AND IN FACT NEITHER OF THESE OFFICIALS HAS A ROLE IN THE MATTERS COMPLAINED OF BY PLAINTIFFS

The complaint's allegations against the moving defendants are sparse. The only reference to the Attorney General is at ¶ 13, which alleges that the New York Attorney General "in the person of ELIOT SPITZER, individually and as a public officer is the State of New York Attorney General duly elected Democratic Party chief law enforcement officer . . . [and] is vested with the authority to defend the State Constitution, Civil Rights Law and Public Officers with duties during good behavior" (bracketed material added; rest as in original). It appears that the Attorney General is being sued in both his personal and official capacities.

The allegations against the Secretary of State are slightly more detailed but are more confusing. The complaint alleges:

> The New York Secretary of State individually and as a public officer is the Secretary of the State of New York is a Republican Party member duly appointed and serves at the pleasure of the Governor . . . is a member of NASS[3] and by law is the Public Officer charged with responsibility to safeguard civil rights under CRL[4] to review for compliance and repository for all incorporated and unincorporated association due process including 57 municipalities with Boards of Elections within, safeguards all records for New York.

Paragraph 4 (all as in original).  The Secretary is also mentioned at ¶ 20, which alleges:

> As a result of the April 22, 2002 redistricting using the 2000 Census by the State Legislature, Governor, Secretary of State, have continued since the 1964 WMCA US Supreme Court case[5] to mis administer and apply the State Constitution and related laws as applies to Municipal boundaries, Election Districts, Assembly Districts, Senate Districts, Congressional Districts and Judicial Districts statewide using total population without giving difference for actual citizens eligible to vote and there by gerrymander vote effectiveness (all as an original).

Although ¶14 purports to name the Secretary "individually and as a public officer," since at present there is no person "duly appointed" to hold this office as the paragraph alleges, and no individual is identified in the complaint by name, it must be held that the complaint sues only the holder of the office in that person's official capacity.[6]

Whatever capacities two officers are sued in, they have had nothing to do with the actions complained of by plaintiffs.  All that is alleged of Attorney General Spitzer is that he "defend[s]

---

[3]  The complaint does not explain this acronym; it may refer to the National Association of Secretaries of State.

[4]  The complaint also does not define what this acronym means; it might refer to the New York Civil Rights Law, but if so it is inaccurate for the Secretary has no such obligation.

[5]  Perhaps a reference to <u>WMCA Inc. v. Lomenzo</u>, 377 U.S. 63 (1963).

[6]  At present, there is an Acting Secretary of State, one Frank P. Milano.

the State Constitution, Civil Rights Law and Public Officers".  In fact, while the Attorney General is charged with the defense of the state constitution, New York Executive Law ("NYEL") § 71, and of public officers, New York Public Officers Law § 17, he has no such responsibility regarding the New York Civil Rights Law.[7]

The allegations of ¶ 20 have, on the surface, more substance, as they allege that the Secretary of State, along with the Legislature and Governor, is involved in determining various election districts.  In fact, however, the Secretary has no such authority.  The position of Secretary of State is created by § 90 of the New York Executive Law, and the other sections of article VI of the Executive Law set forth the duties of the Secretary and of his agency, the Department of State.  Pursuant to § 93, the Secretary has "the custody of all laws and concurrent resolutions of the legislature," and he maintains the rules and regulations of state agencies. NYEL § 102.  Nothing in his duties, however, gives him an authority to enact legislation or, more particularly, to decide district boundaries.

The current district boundaries in New York were defined by the New York State Legislature in April of 2002, following the 2000 census.  <u>Rodriguez v. Pataki</u>, 308 F.Supp. 2d 346, 351 (S.D.N.Y. 2004) (three judge court).  The districts are defined by statutes enacted and amended from time to time by the Legislature.  *See, e.g.*, New York State Law § 111 (congressional districts); § 121 (assembly districts); § 124 (senate districts); and New York Judiciary Law § 140 (judicial districts).  In enacting these provisions the legislature was acting pursuant to its authority under the New York State Constitution, article III § 4.

---

[7]  The Attorney General does have the authority to enforce, pursuant to § 57, the provisions of article V-A of the NYCRL, and also can bring an action under § 79-m of that statute, but these have nothing to do with the present case.

6

The provisions cited above provide for no role by either the Attorney General or the Secretary of State in making these determinations.  The complaint makes no allegations against them, and it is well settled that a state officer cannot be held liable for damages without some personal liability on his part.  Patterson v. County of Oneida, 375 F.3d 206, 230 (2d Cir. 2004); Back v. Hastings on Hudson Union Free School District, 365 F.3rd 107, 122 (2d Cir. 2004); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977).  An official is not liable under § 1983 "merely because he held a high position of authority".  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  And although under Ex parte Young, 209 U.S. 123, 155-58 (1908), a public official sued in his or her official capacity may be enjoined to take or refrain from future action, since the Attorney General and the Secretary of State have no authority to grant any of the relief the plaintiffs seek, they are not proper defendants under this theory.  "Young does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute."  Children's Healthcare is a Legal Duty v. Deters, 92 F.3d 1412, 1415 (6th Cir. 1996) (citations omitted).

These defendants simply have had no involvement in the acts complained of in the complaint, no matter how generously it might be interpreted, and so the action must be dismissed as to them.

## POINT III

## PLAINTIFFS CANNOT PROCEED BECAUSE
## THEY LACK STANDING AND HAVA DOES NOT
## PROVIDE FOR A PRIVATE RIGHT OF ACTION

Even if the moving defendants had some involvement in whatever it is that plaintiffs complain of, these plaintiffs cannot raise these claims.

### A.  Plaintiffs Lack Standing.

Standing is "the threshold question in every federal case."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  In Warth, the Supreme Court held that there are both constitutional requirements for establishing standing, as well as "prudential rules of standing" that limit the class of persons who may invoke the courts' decisional and remedial powers." Id. at 499.

The constitutional "standing question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" so as to present a "case or controversy" within the meaning of article III of the Constitution.  Warth, 422 U.S. at 498.  To satisfy constitutional article III standing requirements, a plaintiff must demonstrate (1) that he has suffered an injury in fact, (2) that the injury is fairly traceable to the defendant's actions, and (3) that the injury is likely to be redressed through the relief sought.  Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003), citing Bennett v. Spear, 520 U.S. 154, 162 (1997).

In addition to the constitutional prerequisites for establishing standing, the Supreme Court has articulated "prudential rules" intended to avoid judicial involvement in cases raising "abstract questions of wide public significance" that are better left to other branches of government and in which "judicial intervention may be unnecessary to protect individual rights."  Warth, 422 U.S. at 500.  First, the harm alleged must normally be more than a "generalized grievance" shared in

substantially equal measure by all or a large class of citizens . . . ." *Id.* at 499. "Second, even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties". *Id.*

The allegations of the complaint amount, even if it is read generously, to a "generalized grievance" concerning the distribution of HAVA funds, regarding which plaintiffs do not claim any interest other than as members of the voting public.

Despite their repeated vague recitations that they have been injured (*see* ¶¶ 50-62), nowhere do plaintiffs make clear what their supposed injury has been. With respect to the disbursement of HAVA funds, plaintiffs claim that these funds have disproportionally gone to defendants California, Nevada, Arizona, New Mexico, and Texas. ¶ 25. Even if this claim were true and actionable, it caused no loss to these plaintiffs, and even if it did, plaintiffs do not make this claim against the moving defendants.

Plaintiffs also suggest that these funds are not equitably distributed within New York (prayer for relief ¶ (a)), but here too they have not claim to have suffered any harm. They do seem to allege that improper funding results in an increased burden on local real property taxes in the disadvantaged municipalities (¶ 34), but even if this argument is accepted, it does not create standing to sue state officials.

The Supreme Court has held that a plaintiff does not have standing to sue the federal government simply because of his status as a federal taxpayer, but such a plaintiff must show that he will sustain "some direct injury" as a result of the challenged practice "and not merely that he suffers in some indefinite way in common with people generally." <u>Commonwealth of</u>

9

Massachusetts v. Mellon, 262 U.S. 447, 488 (1923); s*ee also* Lujan v. Defenders of Wildlife, 504

U.S. 555, 575 (1992); Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 217

(1974); Ex parte Levitt, 302 U.S. 633, 634 (1937); Frothingham v. Mellon, 262 U.S. 447 (1923).

This rule is "equally true" when applied to a challenge to the actions of a state.  Doremus v.

Board of Education, 342 U.S. 429, 434 (1952).  In instances where a state taxpayer sues to

challenge alleged violations of the First Amendment's Establishment Clause, there may be

standing, *see, e.g.,* Mueller v. Allen, 463 U.S. 388 (1983); Hunt v. McNair, 413 U.S. 734 (1973);

Walz v. Tax Commission, 397 U.S. 664 (1970), but no such claim is made in the instant case.  It

is true that a municipality's taxpayer may challenge a municipality's actions solely on his

taxpayer status, Frothingham v. Mellon, 262 U.S. at 486; Gwinn Area Community Schools v.

Michigan, 741 F.2d 840, 844 (6th Cir. 1984), but this argument does not give him standing to

contest the *state's* actions.  *See* Board of Education v. New York State Teachers' Retirement

System, 60 F.3d 106, 110-111 (2d Cir. 1995) ("[We] decline to extend the availability of

municipal taxpayer standing to actions where a municipal taxpayer challenges an expenditure of

municipal funds mandated by state law").

　　　　The complaint also, and perhaps primarily, challenges the way various election districts –

for assembly, senate, congressional, and judicial elections – are defined.  Plaintiffs have even less

of an argument for standing on these claims.

In <u>Sharrow v. Brown</u>, 447 F.2d 94 (2d Cir. 1971), the plaintiff pursued a claim[8] that census data which had resulted in New York losing congressional seats was flawed because it did not comport with the language of § 2 of the Fourteenth Amendment providing that:

> when the right to vote . . . is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

*Id.* at 95.  The Court of Appeals held, however, that the individual bringing the suit lacked standing.

While acknowledging that an increased number of congressional delegates from New York would benefit plaintiff, *id.* at 96, the Court of Appeals, relying on <u>Lampkin v. Connor</u>, 239 F. Supp. 757, 760-763 (D.C.D.C.1965), *aff'd*, 360 F.2d 505 (D.C. Cir. 1966), held that:

> to establish standing in the present case, Sharrow would have to show, at least approximately, the apportionment his interpretation of [§ 2 of the Fourteenth Amendment] would yield, not only for New York but for every other State as well.  This would necessitate a state-by-state study of the disenfranchisement of adult males, a task of great proportions.  And even after approximate nation-wide reapportionment figures were derived, it might well be that, because of population shifts, or because New York itself disenfranchised a portion of its adult males, New York's representation would not be increased as Sharrow claims.

*Id.* at 97 (footnote omitted).  "Without such evidence, we cannot say that Sharrow has established his standing to seek the relief he requests."  *Id.*

---

[8]  This plaintiff had, like the plaintiffs at bar, not confined himself to this action alone. *See also* <u>United States v. Sharrow</u>, 309 F.2d 77 (2d Cir. 1962); <u>Sharrow v. Puyser</u>, 443 F.Supp. 231, 323 (S.D.N.Y. 1977).

11

The application of this rule to the instant case is obvious.  Plaintiffs here allege that the supposed distinction between what they characterize as "VAP" (voting age population) and "CVAP" (citizen voting age population) in apportioning HAVA funds means that "New York suffers when California etcetera game the VAP versus CVAP mechanism –  means New York gets less $$$ than it should be entitled to" (¶ 35; all as in original), but like plaintiff in <u>Sparrow</u> these plaintiffs do not present evidence to support this claim.  Under the logic of <u>Sparrow</u>, plaintiffs at bar would have to provide details of the funds distributed not only in New York but to the other named states, and they have not pleaded any such detail.  Therefore, the present plaintiffs can no more show harm to them than did the plaintiff in <u>Sparrow</u>, and so like him, they lack standing.

Plaintiffs have therefore failed to meet either the constitutional or the prudential requirements for establishing standing, and so even if their complaint alleged some involvement by the moving defendants in the actions they complain of, plaintiffs lack standing to assert their claims against these defendants.

**B.  Plaintiffs Do Not Have a Private Cause of Action Under HAVA.**

Apart from their lack of standing, plaintiffs do not have a private cause of action under the HAVA provisions involved in this case, *i.e.*, Titles 1 and 2 governing payments to the states for use on improving voting systems.  HAVA itself does not create a private right of action.  *See* <u>Sandusky County Democratic Party v. Blackwell</u>, 387 F.3d 565, 572 (6th Cir. 2004).  Plaintiffs might argue, however, that HAVA creates a federal right enforceable under 42 U.S.C. § 1983, but such an argument also fails.

 The Supreme Court has articulated three factors for determining whether a particular statute gives rise to a private cause of action:

> First, Congress must have intended that the provision in question
> benefit the plaintiff.  Second, the plaintiff must demonstrate that
> the right assertedly protected by the statute is not so "vague and
> amorphous" that its enforcement would strain judicial competence.
> Third, the statute must unambiguously impose a binding obligation
> on the States.  In other words, the provision giving rise to the
> asserted right must be couched in mandatory rather than precatory
> terms.

Blessing v. Firestone, 520 U.S. 329, 340-341 (1997) (internal citations omitted) (holding that

Title IV-D of the Social Security Act, requiring that states receiving federal child welfare funds

"substantially comply" with measures designed to ensure timely child support payments, did not

give mothers of children eligible for child support a private cause of action); *see also* Gonzaga

University v. Doe, 536 U.S. 273, 282 (2002) (no private cause of action for university students to

enforce provisions of the Family Education Rights and Privacy Act of 1974 which prohibit

federal funding of educational institutions that have a practice or policy of disclosing educational

records to unauthorized persons).  In setting forth that three-part test, the court in Blessing

emphasized that it is only violations of federal *rights,* not federal *laws,* that give rise to bringing a

§ 1983 action.  Blessing v. Firestone 520 U.S. at 340.  Whatever quarrels plaintiffs may have with

respect to the implementation of HAVA, they cannot establish that they have a federal right under

that statute.

Several cases have found that those sections of Title 3 of HAVA directed at individuals

seeking to file provisional ballots do create enforceable § 1983 rights.  *See* Sandusky County

Democratic Party v. Blackwell; Florida Democratic Party v. Hood, 342 F. Supp. 2d 1073 (N.D.

Fla. 2005); Bay County Democratic Party  v. Land, 347 F. Supp. 2d 404 (N.D. Mich. 2004).   The

courts in those cases pointed to the language of HAVA § 302(a)(2), which states that upon

making the required affirmation, an "individual shall be permitted to cast a provisional ballot."

That language, concluded the court in Bay County Democratic Party, "unambiguously" creates in the voter the right to cast a provisional ballot under certain circumstances."

The Title 1 and 2 funding provisions, however, contain no comparable rights-creating language.  Indeed, the court in Bay County Democratic Party specifically contrasted the right of individuals to cast provisional ballots established in Title 3 with the rest of HAVA:

> Certainly, other sections of HAVA, perhaps a majority of them, primarily regulate the conduct of officials involved in the voting process.  There can be little question, however, that the language quoted above was intended to benefit voters who are turned away from the polls.  It is this type of unmistakable rights-focused language that the Supreme Court has found to establish a private right of action in other contexts.

Id. at 426.  The HAVA provisions here fall precisely into the "majority" of the statutes provisions described in the above language, so it does not allow for a private right of action.

The Title 1 and 2 payment provisions, unlike Title 3's provisional ballot requirements, are clearly directed at states,  not a particular class of individuals upon whom the statute is designed to confer rights, and HAVA specifically provides that the provisions are to be enforced by the United States Attorney General.  42 U.S.C. § 15511.[9]  Plaintiffs, therefore, cannot pursue this action and it should be dismissed.

## POINT IV

**ALTERNATIVELY, THE COURT SHOULD TRANSFER VENUE
OF THIS ACTION TO THE NORTHERN DISTRICT OF NEW YORK, WHERE
PLAINTIFFS HAVE PREVIOUSLY COMMENCED A SIMILAR ACTION**

---

[9]  In fact, the Attorney General has brought suit against New York to enforce various HAVA provisions.  United States of America v. New York State Board of Elections, NDNY, 06-cv-0263, filed March 1, 2006.

If this Court does not dismiss it should transfer this case to the Northern District of New York, where there is pending a previously filed action which plaintiffs themselves agree is similar enough to this action that the two cases should be heard together.

In 2004 there was filed in the Northern District the case Loeber v. Spargo, 04-cv-1193. The plaintiffs in that action include several of the present plaintiffs, *to wit*, Messrs. Forjone, Van Allen, Razzano, Person, and Strunk, and the claims, although no better presented than those in the present case, involve voting in New York and HAVA. The Northern District (Hurd, J.) granted defendants' motions and dismissed the action. On appeal the Court of Appeals for the Second Circuit reinstated part of plaintiffs' claims and remanded the action to the District Court, with the direction that plaintiffs file an amended complaint.[10] That amended complaint, a copy of which is ex. A to the Sullivan declaration, was filed on November 21, 2005, and is presently pending.

Plaintiffs commenced the instant action on February 6, 2006, and shortly after, on February 27, 2006, in response to defense motions to dismiss the amended complaint, plaintiffs filed with the Northern District a "motion for change of venue to jurisdiction of WDNY 06-00080 case Forjone et al. v. California et al." Sullivan dec. ex. B. In support of this motion they filed a number of affidavits or declarations (Sullivan dec. exs. C-E (without exhibits)) which, while not entirely clear, include the statement that plaintiffs filed the instant case because of their dissatisfaction with the progress of the Loeber action. *See* Van Allen aff., Sullivan dec. ex. E, ¶ 14.

Given the difficulty understanding the pending complaints in both actions, perhaps it is not immediately apparent that they are raising similar claims. A look at the two documents'

---

[10] Since the decision is not generally reported it is attached as an appendix to this memorandum.

prayers for relief, however, reveals that the first 10 or 11 paragraphs of each[11] are nearly identical, indicating sufficient overlap between the two cases.  Further, five persons are plaintiffs in both cases, and while the <u>Loeber</u> plaintiffs do not specifically state in their transfer motion that the cases are similar enough to warrant joinder or consolidation, they necessarily imply this by virtue of the motion they have filed in the Northern District, and can hardly be in a position to argue to this Court that the two cases should not be heard together.

That being the case, the only question is which court should hear the case.  Since it is clear that it was the Northern District's <u>Loeber</u> case that was filed first – indeed, plaintiffs admit that they filed this action because they were unhappy with the progress of <u>Loeber</u> – this case should be transferred to the Northern District, and not vice versa, because of:

> the well-settled principle in this Circuit that where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second.

<u>First City Nat. Bank & Trust Co. v. Simmons</u>, 878 F.2d 76, 79 (2d Cir. 1989) (citations, internal quotes and ellipses omitted).

## POINT V

### IF THE COURT DOES NOT DISMISS AND DOES NOT TRANSFER, IT SHOULD ORDER PLAINTIFFS TO FILE A MORE DEFINITE STATEMENT

If this case is allowed to proceed in this Court – which might well mean that it should go to a three judge panel – the Court should require plaintiffs to file an amended complaint meeting the requirements of Rule 8(a) of the F.R.Cv.P.  The present complaint does not meet these

---

[11]   In the present case these paragraphs are numbered; in the amended complaint in <u>Loeber</u> they are lettered, making comparisons a little more difficult than should be necessary. Paragraphs 1-10 of the former roughly parallel paragraphs a and b-k of the latter.

requirements, leaving defendants and the Court to decipher what it claims and what it is that plaintiffs are seeking.

## <u>Conclusion</u>

The motion of the New York State Attorney General and the New York State Secretary of State should be granted in all respects and the complaint should be dismissed as to them. Alternatively, should the Court deny this motion, it should transfer this action to the Northern District of New York or order the plaintiffs to file a more definite statement, so that their allegations are comprehensible.

DATED:      Buffalo, New York
               March 13, 2006

Respectfully submitted,


ELIOT SPITZER
Attorney General of the State of New York
Attorney for Defendants
BY:
s/ *Peter B. Sullivan*
Peter.Sullivan@oag.state.ny.us
PETER B. SULLIVAN
Assistant Attorney General of Counsel
107 Delaware Avenue - 4th Floor
Buffalo, New York 14202
(716) 853-8473

RONALD G. LOEBER, WILLIAM E. BOMBARD, WILLIAM A. GAGE, JOHN-JOSEPH FORJONE, FAIRLENE G. RABENDA, ROY-PIERRE DETIEGE-CORMIER, RONALD E. SACOFF, GABRIEL RASSANO, EDWARD M. PERSON JR., AD HOC NEW YORK STATE CITIZENS FOR CONSTITUTIONAL LEGISLATIVE REDISTRICTING, Plaintiffs, H. WILLIAM VAN ALLEN, CHRISTOPHER EARL STRUNK, Plaintiffs-Appellants, -v- THOMAS J. SPARGO, individually and as Justice of the NYS Supreme Court, 61 JOHN AND JANE DOE NYS SENATORS, all individually and as state senators past and present, 149 JOHN AND JANE DOE NYS ASSEMBLY MEMBERS, all individually and as past and present, GEORGE E. PATAKI, individually and as NYS Governor, RANDY A. DANIELS, NYS Secretary of State with authority and repository for corporations and unincorporated associations service, ELIOT L. SPITZER, New York State Attorney General, NATIONAL ASSOCIATION OF SECRETARIES OF STATE, "NASS", PETER KOSINSKI, individually and in his official capacity at the NASS, ALBERTO GONZALES, United States Attorney General, Defendants-Appellees, JOSEPH BRUNO, SHELDON SILVER, LESLIE REYNOLDS, Executive Director for the Executive Committee, Defendants.**

** The Clerk of this Court is instructed to alter the caption of this case as shown here to correct minor errors, conform to conventions, and reflect the replacement of John Ashcroft by Alberto Gonzales as United States Attorney General.

04-5720-cv

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

*144 Fed. Appx. 168; 2005 U.S. App. LEXIS 17480*

**August 15, 2005, Decided**

**NOTICE: [**1]** RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Northern District of New York (Kahn, J.). *Loeber v. Spargo, 2004 U.S. Dist. LEXIS 21907 (N.D.N.Y, Oct. 29, 2004)*

**COUNSEL:** For Appellants: H. William Van Allen, Christopher Earl Strunk, Hurley, NY, Pro se.

For Appellee: Jennifer Grace Miller, Assistant Solicitor General (Eliot Spitzer, Attorney General of the State of New York, Daniel Smirlock, Deputy Solicitor General, on the brief), Albany, NY.

**JUDGES:** Present: ROSEMARY S. POOLER, SONIA SOTOMAYOR, Circuit Judges, EDWARD R. KORMAN, Chief District Judge.*

* The Honorable Edward R. Korman, Chief

Judge of the United States District Court for the Eastern District of New York, sitting by designation.

**OPINION:**

**[*169] SUMMARY ORDER**

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the appeal be and it hereby is **DISMISSED** in part, the judgment of said District Court be and it hereby is **VACATED** in part and **REMANDED**, and that the several motions of plaintiffs-appellants be and hereby are **DENIED**.

Plaintiffs-appellants H. William Van Allen **[**2]** and Christopher Earl Strunk appeal from an order of the district court dismissing sua sponte plaintiffs' claims regarding the conduct of the November 2004 national election and legislative redistricting. We assume the parties' familiarity with the facts, proceedings below, and specification of issues on appeal.

While not so specified, the dismissal of the election-based claims appears to have been pursuant to *Federal Rule of Civil Procedure 12(b)(1)*. In the absence of any

discussion by the district court, we presume that the redistricting claims were dismissed under *Federal Rule of Civil Procedure 12(b)(6)*. We review dismissal under either Rule de novo, accepting all factual allegations of the complaint and drawing all inferences in favor of plaintiffs. *Western Mohegan Tribe and Nation v. Orange County, 395 F.3d 18, 20 (2d Cir. 2004)* (per curiam).

The appellants dispute the district court's conclusion that the claims based on the November 2004 election were not, at that time, ripe for review. We do not, and cannot, express any opinion on the correctness of this decision. Because we can [**3] no longer alter the conduct of the November [*170] 2004 election, and appellants requested only injunctive relief, these claims are now moot and we are therefore without jurisdiction. See *Church of Scientology v. United States, 506 U.S. 9, 12-13, 121 L. Ed. 2d 313, 113 S. Ct. 447 (1992)*. Of course, an exception to the mootness doctrine exists where the claim is capable of repetition, yet evading review. *Lerman v. Board of Elections, 232 F.3d 135, 141 (2d Cir. 2000)*. Here, the appellants election claims have obviously evaded review, but appellants have made no showing that the issue is capable of repetition. We therefore dismiss the appeal as to the election claims.

Turning to the redistricting claims, we note that the district court failed to present any discussion as to its decision to dismiss. Appellees suggest that the order of dismissal was predicated on the failure of the complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2)*. The complaint here, while prolix and burdensome both for the court and for appellees, can nonetheless be read and comprehended [**4] to plead at least some claims that are not frivolous on their face. We therefore vacate the district court's order as to the redistricting claims and remand with instructions to permit the filing of an amended complaint that omits unnecessary detail. Cf. *Salahuddin v. Cuomo, 861 F.2d 40, 42-43 (2d Cir. 1988)*. In reviewing any amended complaint, the district court should be mindful of our well-established principle that pro se complaints are to be construed liberally. *Phillips v. Girdich, 408 F.3d 124, 127-28 (2d Cir. 2005)*. Furthermore, if a complaint satisfies the "short and plain statement" requirement, it otherwise need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002)*.

The district court should also be mindful of the requirements of *28 U.S.C. § 2284*, and that its inquiry regarding whether to refer the matter to a three-judge panel is limited to 1) "whether the constitutional question raised is substantial"; 2) "whether the complaint at least formally alleges a basis for [**5] equitable relief"; and 3) "whether the case presented otherwise comes within the requirements of the three-judge statute." *Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 8 L. Ed. 2d 794, 82 S. Ct. 1294 (1962)*. A constitutional question is insubstantial only if prior decisions render the issue inescapably frivolous and leave no room for any inference of controversy. *Goosby v. Osser, 409 U.S. 512, 518, 35 L. Ed. 2d 36, 93 S. Ct. 854 (1973)*.

We have reviewed appellants' additional arguments concerning judicial bias and lack of notice of the October 2004 order to show cause hearing, and find them to be without merit.

Appellants have also made numerous motions before this court, all of which we deny. The motion to supplement the complaint should be made before the district court on remand, and we leave it to the district court to decide whether to permit such amendment. The motions to enjoin the New York Secretary of State to enforce civil rights law protection and to restrain persons elected to the state legislature from taking office are based on the November 2004 election and are now moot. The motion to remand to a three-judge panel is disposed of above by remanding [**6] to the district court for consideration of the requirements of *Section 2284*. The motion for in banc review is denied as it is not clear at this stage that the case implicates the uniformity of our precedent or is of exceptional importance. See *Fed. R. App. P. 35(a)*.

[*171] For the above reasons, we dismiss the appeal as to the claims based on the conduct of the November 2004 election. We vacate the order of the district court as to the dismissal of the redistricting claims and remand for the district court to permit amendment of the complaint and for consideration of whether to refer the claims to a three-judge panel in accordance with *28 U.S.C. § 2284*. We deny the motions filed in this Court on November 12, 2004, and July 1, 2005.